| | |
|---|---|
| HENRY LEE JONES,<br><br>    Petitioner,<br><br>v.<br><br>ZAC POUNDS,<br><br>    Respondent. | Case No. 3:23-cv-01063<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Petitioner Henry Lee Jones filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1.) At Jones's request, the Court appointed the Federal Public Defender to represent him. (Doc. No. 15.) With the assistance of counsel, Jones filed a motion to stay these proceedings and to hold his § 2254 petition in abeyance while he exhausts his post-conviction remedies in state court as required by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). (Doc. No. 26.) Respondent Zac Pounds opposes Jones's stay-and-abey motion (Doc. No. 27), and Jones has filed a reply (Doc. No. 28).

The Court referred this action to the Magistrate Judge for decision of nondispositive motions and for reports and recommendations on dispositive motions.[1] (Doc. No. 15.) For the

---

[1] Because the disposition of stay-and-abey motions can be dispositive of habeas petitions, the Magistrate Judge addresses Jones's motion by report and recommendation. *See* Brian R. Means, *Federal Habeas Manual* § 9C:70 (2024 ed.) ("Without consent of the parties, magistrate judges lack jurisdiction to *deny* motions to stay and abey § 2254 proceedings to allow the prisoner to exhaust state court remedies.").

reasons that follow, the Magistrate Judge will recommend that the Court grant in part and deny in part Jones's motion to stay and abey his § 2254 petition.

I.      **Relevant Background**

   A.      **State Trial and Post-Conviction Proceedings**

On October 7, 2003, a grand jury in Shelby County, Tennessee indicted Jones "for the first degree premeditated murder of Clarence James, the first degree premeditated murder of Lillian James, the first degree felony murder of Clarence James in perpetration of a robbery, and the first degree felony murder of Lillian James in perpetration of a robbery." *State v. Jones*, 568 S.W.3d 101, 110 (Tenn. 2019), *cert. denied*, 140 S. Ct. 262 (2019); (*see also* Doc. 1-1). Jones was arrested in Florida and extradited to Tennessee for trial. (Doc. No. 1-1); *see also State v. Jones*, 450 S.W.3d 866, 871 (Tenn. 2014). Jones "was first tried in 2009" in Shelby County Criminal Court. *State v. Jones*, 568 S.W.3d at 110. "Although the first trial resulted in convictions on all counts and sentences of death, [the Tennessee Supreme Court] reversed the convictions because of a prejudicial evidentiary error and remanded the case to the trial court for a new trial." *Id.*

After a second trial in 2015, a jury convicted Jones of two alternative counts of first-degree premeditated murder and two alternative counts of first-degree felony murder. *Id.* at 109. The jury sentenced Jones to death on all four counts. *Id.* The trial court merged each felony murder conviction into the corresponding premeditated murder conviction and imposed two sentences of death. *Id.* The Tennessee Court of Criminal Appeals (TCCA) and the Tennessee Supreme Court affirmed Jones's convictions and sentences. *Id.* at 110, 143. The United States Supreme Court denied Jones's petition for a writ of certiorari. *Jones v. Tennessee*, No. 19-5062, 140 S. Ct. 262 (Oct. 7, 2019).

Jones filed a pro se petition for post-conviction relief in Shelby County Criminal Court on December 26, 2019, with assistance from the Tennessee Office of the Post Conviction Defender

(OPCD). *Jones v. State*, No. W2020-01347-CCA-R10-PD, 2022 WL 601074, at *1 (Tenn. Crim. App. Mar. 1, 2022). Jones's petition alleged that his convictions were:

> (1) based on evidence gained pursuant to an unlawful search and seizure; (2) based on a violation of the privilege against self-incrimination and the right to counsel; (3) based on the unconstitutional failure of the prosecution to disclose evidence favorable to the defense; (4) based on a violation of double jeopardy; and (5) based on an unconstitutionally selected and impaneled jury. [Jones] also alleged ineffective assistance of counsel, even though he represented himself at his second trial.

*Id.*

In January 2020, the post-conviction court determined that Jones's "petition 'just barely' presented a colorable claim, in part because the petition 'contain[ed] almost no specific factual allegations'" and appointed the OPCD to represent Jones in post-conviction proceedings. *Id.* at *2. The post-conviction court ordered the OPCD to file an amended petition on Jones's behalf within thirty days. *Id.* In February 2020, the OPCD filed "[a] motion requesting additional time to file an amended petition . . . [,]" but, "[f]or reasons that are unclear from the record, the motion was never heard . . . ." *Id.* "On March 13, 2020, the Tennessee Supreme Court suspended in-person court proceedings by declaring a state of emergency for the Judicial Branch of the Tennessee government as a result of the COVID-19 pandemic." *Id.*

"On June 5, 2020, the post-conviction court held a video hearing on the matter [of Jones's petition] to ascertain why the OPCD had not filed an amended petition." *Id.* The OPCD "initially apologiz[ed] for failing to request an extension," but, after "'reviewing the digital case file[,]'" represented to the court "that there was a motion for extension of time filed in February . . . ." *Id.* at *3. "The post-conviction court stated that the motion was never brought to the attention of the court[,]" "noted the 'unusual situation[,]' and opted to give the OPCD 'more time' . . .[,] ordering the OPCD to file an amended petition by September 8, 2020.'" *Id.*

"On August 14, 2020, the OPCD filed a motion seeking another extension of time to file an amended petition" asking "the post-conviction court [to] pick a 'viable date in 2021' due to suspension of 'in-office work and case related travel' as a result of COVID-19." *Id.* The post-conviction court held a hearing by video conference on September 3, 2020. *Id.* In support of its motion for a further extension, "[t]he OPCD explained they were still in the process of accumulating records necessary for the proper amendment of [Jones's] pro se petition and noted that they were still not permitted to 'do field investigation' as a result of the ongoing pandemic." *Id.* The OPCD "expressed concern about filing an amended petition without fully investigating all the potential issues." *Id.* However, "the OPCD did not request or suggest that [it] be relieved from representing [Jones]." *Id.* "The post-conviction court stated that it would review the matter and issue a ruling in the next few days but informed the OPCD that they did not have to file the amended petition by the September 8 deadline." *Id.*

On September 11, 2020, the post-conviction court sua sponte "entered an order relieving the OPCD as counsel of record and substituting two private attorneys to represent [Jones] on post-conviction." *Id.* The OPCD filed an application for an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure, and the TCCA granted the Rule 10 application to address the post-conviction court's removal of the OPCD as counsel. *Id.* at *4. Jones's "post-conviction proceedings were stayed pending th[e] appeal." *Id.* More than a year later, on March 1, 2022, the TCCA issued an opinion reversing the post-conviction court's removal order, reinstating the OPCD as counsel of record for Jones, and remanding "to the post-conviction court for further efficient proceedings." *Id.* at *10.

On remand, Jones filed a motion to disqualify the Office of the Tennessee Attorney General and Reporter from representing the State in Jones's post-conviction proceedings, challenging the

4

legality and applicability of Tenn. Code Ann. § 40-30-114(c)(1).[2] (*See* Doc. No. 27); *see also* Pet'r's Resp. to State of Tenn.'s Not. of Appellate Op., *Jones v. State*, Case No. 03-06997 (Tenn. Crim. Ct. Mar. 5, 2025). As Pounds asserts, it appears Jones's state court post-conviction "proceedings have not proceeded while an issue raised in the disqualification motion was pending on appeal in another case." (Doc. No. 27, PageID# 198.) The Court takes judicial notice that the State and Jones recently filed additional briefing regarding Jones's motion to disqualify the Attorney General's office. *See* State of Tenn.'s Not. of Appellate Op., Case No. 03-06997 (Tenn. Crim. Ct. Feb. 28, 2025); Pet'r's Resp. to State of Tenn's Not. of Appellate Op.; State of Tenn.'s Suppl. Resp. in Opp'n to Mots. to Disqualify Att'y Gen., Case No. 03-06997 (Tenn. Crim. Ct. Apr. 2, 2025). It does not appear that the amended petition for post-conviction relief initially ordered in January 2020 has been filed. The next hearing in Jones's post-conviction proceedings is set for July 11, 2025.

Jones is currently incarcerated at the Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee. (Doc. No. 1.)

---

[2]   This statute provides:

In cases where a defendant has been sentenced to death and is seeking collateral review of a conviction or sentence, the attorney general and reporter has exclusive control over the state's defense of the request for collateral review and has all of the authority and discretion that the district attorney general would have in non-capital cases as well as any additional authority provided by law. The attorney general and reporter is not bound by any stipulations, concessions, or other agreements made by the district attorney general related to a request for collateral review.

Tenn. Code Ann. § 40-30-114(c)(1).

B.      **Federal Proceedings**

Jones initiated this action on October 2, 2023, by filing a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.[3] (Doc. No. 1.) The grounds on which Jones seeks habeas relief include jurisdictional defects in his trial, denial of his constitutional right to a speedy trial, and unconstitutional suppression of exculpatory evidence.[4] (Doc. Nos. 1, 26-1.)

On December 7, 2023, the Capital Habeas Unit of the Federal Public Defender's office notified the Court that it was "available and willing to accept appointment to represent Mr. Jones and offer legal advice, including whether his petition should be stayed pending exhaustion of state court remedies." (Doc. No. 6, PageID# 79–80.) On Jones's motion (Doc. No. 14), the Court appointed the Federal Public Defender to represent Jones in this matter (Doc. No. 15) and referred

---

[3]     "Under the prison mailbox rule, a *habeas* petition is considered filed when the prisoner provides the petition to prison officials for filing." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012). "Underlying this rule is recognition of the fact that prisoners can generally control when they present materials to their custodians for mailing, but they cannot control when these materials are actually mailed." *Neal v. Bock*, 137 F. Supp. 2d 879, 882 n.1 (E.D. Mich. 2001). "Absent evidence to the contrary, a federal court will assume that a prisoner gave his habeas petition to prison officials on the date he signed it[.]" *Id.* Jones signed his § 2254 petition on October 2, 2023. (Doc. No. 1.)

[4]     On the same day that he filed his § 2254 petition in this action, Jones also filed a petition for a writ of habeas corpus under 28 U.S.C. § 2441. Pet. for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, *Jones v. Pounds*, Case No. 3:23-cv-01062 (M.D. Tenn. Oct. 11, 2023), ECF Nos. 1, 1-1. Jones's § 2241 petition was initially docketed as a separate action. *See id.* However, on December 21, 2023, the court found that Jones's § 2241 petition "includes the same challenge" to his current confinement as his § 2254 petition in this action. Mem. & Order at 1, *Jones v. Pounds*, Case No. 3:23-cv-01062 (M.D. Tenn. Dec. 21, 2023), ECF No. 9. The court further found that Jones's challenge to his custody "must be pursued under § 2254, not § 2241." *Id.* at 2. Because Jones "already ha[d] a pending § 2254 action, the court . . . dismiss[ed] [the § 2241 petition] without prejudice as duplicative" rather than "construing his § 2241 [p]etition as one arising under § 2254[.]" *Id.* The court directed the clerk of court to "re-docket" Jones's § 2241 petition "as a 'supplement'" in this action. *Id.* The clerk of court did so on the same date. (Doc. No. 12.)

the action to the Magistrate Judge "for decision on all nondispositive matters[ ] and for a Report and Recommendation on dispositive matters." (Doc. No. 15.)

The Magistrate Judge held a telephone conference with the parties during which Jones's counsel stated that Jones "intend[ed] to file a motion to address the state-court exhaustion of Jones's federal claims." (Doc. No. 17.) Jones filed a motion to stay these proceedings and hold his § 2254 petition in abeyance. (Doc. No. 18.) Pounds filed a response in opposition (Doc. No. 19), but Jones did not file an optional reply. The Court found that Jones's motion did not comply with this Court's Local Rules and directed the Clerk of Court to administratively terminate Jones's motion without prejudice to Jones filing "an amended motion to stay that complies with the Court's Local Rules and specifically addresses how the relevant legal standard applies to the facts and circumstances of this case." (Doc. No. 21, PageID# 178, 179.)

Jones filed an amended motion to stay and abey on April 16, 2025. (Doc. No. 26.) Pounds responded in opposition, arguing that the Court should deny Jones's stay-and-abey motion. (Doc. No. 27.) Alternatively, Pounds argues that, if the Court grants Jones's motion, the Court should transfer this action to the Western District of Tennessee. (*Id.*) Jones filed a reply in support of his motion to stay and abey and in opposition to Pounds's request for transfer. (Doc. No. 28.)

II.     Analysis

   A.     **Jones's Motion to Stay and Abey His § 2254 Petition**

Fourteen years before Congress passed AEDPA, the Supreme Court held in *Rose v. Lundy*, 455 U.S. 509, 518 (1982), that habeas petitions filed by people in state custody are subject to "[a] rigorously enforced total exhaustion rule" which requires petitioners "to seek full relief first from the state courts" before seeking habeas relief from federal courts. The Supreme Court "reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Lundy*, 455

U.S. at 518–19). It therefore directed federal district courts to dismiss habeas petitions including unexhausted claims without prejudice to refiling after petitioners returned to state court. *Lundy*, 455 U.S. at 522; *see also Rhines*, 544 U.S. at 274.

When the Supreme Court decided *Lundy*, "there was no statute of limitations on the filing of federal habeas corpus petitions. As a result, petitioners who returned to state court to exhaust their previously unexhausted claims could come back to federal court to present their perfected petitions with relative ease." *Rhines*, 544 U.S. at 274. That changed with AEDPA's passage in 1996. *See id.* "AEPDA preserved *Lundy's* total exhaustion requirement, but it also imposed a 1-year statute of limitations on the filing of federal petitions." *Id.* (first citing 28 U.S.C. § 2254(b)(1)(A); and then citing 28 U.S.C. § 2244(d)). "[T]he interplay between AEDPA's 1-year statute of limitations and *Lundy's* dismissal requirement" led to "grav[e] . . . difficult[ies] . . . for petitioners and federal district courts alike." *Id.* at 275.

> As the Supreme Court explained in *Rhines v. Weber*:
>
> petitioners who come to federal court with "mixed" petitions [containing exhausted and unexhausted claims] run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. For example, if the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim. The problem is not limited to petitioners who file close to the AEDPA deadline. Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case.

544 U.S. at 275. The Supreme Court recognized that "some district courts ha[d] adopted a . . . 'stay-and-abeyance' procedure" "[i]n an attempt to solve the problem[.]" *Id.* "Under this

procedure, rather than dismiss [a] mixed petition pursuant to *Lundy*, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* Once the petitioner exhausts state remedies, the district court can lift the stay and allow the petitioner to proceed in federal court. *Id.* at 276. The Supreme Court recognized that "[d]istrict courts do ordinarily have authority to issue stays where such a stay would be a proper exercise of discretion." *Id.* (first citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); and then citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). The Supreme Court held that "AEDPA does not deprive district courts of that authority, but it does circumscribe their discretion." *Id.* (citing 28 U.S.C. § 2254(b)(1)(A)). Consistent with AEDPA's twin purposes of exhaustion and finality, the Supreme Court instructs that "stay and abeyance should be available [for habeas petitions] only in limited circumstances." *Id.* at 277. Specifically, stay and abeyance is appropriate if the district court determines that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278; *see also McBride v. Skipper*, 76 F.4th 509, 513 (6th Cir. 2023) (quoting *Rhines*, 544 U.S. at 277–78).

As a threshold matter, Pounds argues that the Court should deny Jones's stay-and-abey motion because, unlike the petition at issue in *Rhines*, Jones's habeas petition "contains only unexhausted claims" and is therefore "not a mixed petition . . . ." (Doc. No. 27, PageID# 200.) In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), "the Supreme Court [ ] held open the possibility of staying a petition presenting only unexhausted claims." *Misch v. Chambers-Smith*, 656 F. Supp. 3d 761, 764 (N.D. Ohio 2023). Specifically, the Supreme Court held in *Pace* that, to "avoid th[e] predicament" of "'litigat[ing] in state court for years only to find out at the end . . .' that his federal habeas petition is time barred[,]" a petitioner may "fil[e] a 'protective' petition in federal court and

9

ask[ ] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *Pace*, 244 U.S. at 416 (citing *Rhines*, 544 U.S. at 278).

"Following *Pace*, the Sixth Circuit has implicitly accepted that a district court may stay and abey a petition containing only unexhausted claims." *Misch*, 656 F. Supp. 3d at 764. For example, in *Hickey v. Hoffner*, 701 F. App'x 422, 426–27 (6th Cir. 2017), the Sixth Circuit remanded a habeas petition containing only an unexhausted ineffective assistance of counsel claim back to the district court to determine whether the petitioner had satisfied the *Rhines* factors. *See also Misch*, 656 F. Supp. 3d at 765 (discussing *Hickey*, 701 F. App'x at 426–27). In doing so, the Sixth Circuit recognized that "other circuits have found [stay-and-abeyance procedures] appropriate for petitions containing solely unexhausted claims." *Hickey*, 701 F. App'x at 426 n.5 (citing *Mena v. Long*, 813 F.3d 907, 912 (9th Cir. 2016)). In *Robinson v. Horton*, 950 F.3d 337, 347 (6th Cir. 2020), the Sixth Circuit remanded a habeas petition with only an unexhausted sentencing claim for the district court to determine whether to dismiss the petition "without prejudice for failure to exhaust, or to stay the petition and hold it in abeyance while Robinson returns to state court to exhaust that claim." *Id.*; s*ee also Misch*, 656 F. Supp. 3d at 765 (discussing *Robinson*, 950 F.3d at 347).

Thus, under Sixth Circuit precedent, the fact that Jones's petition contains only unexhausted claims is not a basis to deny his motion to stay and abey. *See Misch*, 656 F. Supp. 3d at 764–65; *Robinson*, 950 F.3d at 347; *Hickey*, 701 F. App'x at 426–27 & n.5. Pounds cites no authority in support of his position. Accordingly, the Court will consider whether Jones has satisfied the *Rhines* factors.

1. **Good Cause**

The Supreme Court did not define "good cause" in *Rhines*. In subsequent cases, the Supreme Court has emphasized that "the decision to grant a stay, like the decision to grant an

evidentiary hearing, is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also id.* ("We do not presume that district courts need unsolicited advice from us on how to manage their dockets."); *cf. Pace*, 544 U.S. at 416 (holding that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court").

Here, the limited record shows that Jones has been pursuing post-conviction relief in state court since 2019. It appears that the combined effects of the COVID-19 pandemic, an interlocutory appeal regarding Jones's representation, and a stay to allow consideration in another case of issues raised in Jones's motion to disqualify the State's representation have significantly delayed the progress of Jones's state post-conviction proceedings. The Court finds that, given the unique circumstances and extended timeline of his state post-conviction proceedings, good cause exists for Jones's failure to exhaust his state-court remedies before filing his § 2254 petition in federal court.

### 2. Potential Merit

The Supreme Court held in *Rhines* that, even if a petitioner has good cause for failing to exhaust his or her state-court remedies, "the district court would abuse its discretion if it were to grant [the petitioner] a stay when his [or her] claims are plainly meritless." 544 U.S. at 277. Under Sixth Circuit precedent, "a claim with at least a colorable basis is not plainly meritless." *Misch*, 656 F. Supp. 3d at 763; *see also Hickey*, 701 F. App'x at 426 (holding that petitioner's claims were not "plainly meritless" where petitioner "presented at least a colorable claim of ineffective assistance [of counsel]"). Jones argues that his § 2254 petition alleges colorable claims of "jurisdictional defects in the trial of his case, the denial of his constitutional right to a speedy trial, and unconstitutional suppression of exculpatory evidence." (Doc. No. 26-1, PageID# 194, ¶ 5.)

### a. Jurisdictional Claims

As Pounds asserts (Doc. No. 27), claims that a state trial court lacked subject-matter jurisdiction under state law are not cognizable on federal habeas review. *See Davis v. Eppinger*, No. 19-3181, 2019 WL 4267752, at *2 (6th Cir. May 16, 2019) ("Reasonable jurists would not debate the district court's conclusion that [petitioner's] assertion that the trial court lacked subject-matter jurisdiction under state law failed to state a claim for federal habeas relief."); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam) ("Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."). Jones has not responded to this argument and has not identified any authority to support federal-court consideration of his state-law jurisdictional claims. The Court should therefore find that Jones's jurisdictional claims are plainly meritless.

### b. Speedy Trial Claims

Whether a speedy trial claim is cognizable on federal habeas review depends on whether a petitioner grounds the claim in federal or state law. Claims based on a petitioner's Sixth Amendment right to a speedy trial are cognizable on habeas review, but claims based on a petitioner's state-law right to a speedy trial are not. *See, e.g.*, *Bennett v. Warden, Lebanon Corr. Inst.*, 782 F. Supp. 2d 466, 478–81 (S.D. Ohio 2011) (finding state-law speedy trial claims not cognizable but addressing merits of constitutional speedy trial claims); *Burns v. Lafler*, 328 F. Supp. 2d 711, 721–22 (E.D. Mich. 2004) (same). Jones's § 2254 petition asserts violations of his Sixth Amendment right to a speedy trial that are cognizable on federal habeas review. *See Bennett*, 782 F. Supp. 2d at 478–81; *Burns*, 328 F. Supp. 2d at 721–22.

The Supreme Court directs courts to consider four factors in determining whether a Sixth Amendment speedy trial violation has occurred: (1) the length of the delay before trial; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and

(4) whether the delay prejudiced the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay[.]" *Id.* at 651–52 (quoting *Barker*, 407 U.S. at 530). "Courts have generally found post-accusation delays that approach one year to be 'presumptively prejudicial.'" *Burns*, 328 F. Supp. 2d at 722 (quoting *Doggett*, 505 U.S. at 652 n.1).

Here, the Shelby County Grand Jury indicted Jones on two counts of first-degree premeditated murder and two counts of first-degree felony murder on October 7, 2003, but Jones's first trial did not take place until May of 2009. (Doc. No. 1-1); *see also State v. Jones*, 568 S.W.3d at 110. A five-and-a-half-year delay between indictment and trial is presumptively prejudicial. *Cf. Barker*, 407 U.S. at 533 (holding that delay of "well over five years . . . was extraordinary"). And Jones asserts that he "did not waive any [ ] speedy trial const[itutional] rights." (Doc. No. 1, PageID# 5.) Based on this limited record, Jones has stated a colorable Sixth Amendment speedy trial claim that is not plainly meritless.

### c. Suppression of Evidence Claims

Jones's § 2254 petition alleges that state prosecutors withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. No. 1.) A meritorious *Brady* claim includes three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021) (quoting *id.*). There is no question that *Brady* claims are cognizable on federal habeas review. Pounds has not argued that Jones's *Brady* claim is plainly meritless.

Jones alleges that the State failed to hand over "discovery records" related to the crime scene, including evidence from the "911 dispatcher" who sent officers to the Jameses' home and evidence from the police who first arrived on the scene. (Doc. No. 1, PageID# 12, 14.) Jones argues that this undisclosed evidence would support his assertion that "the state stage[d] and planted evidence inside the crime scene" by "mov[ing] the [female] victim[']s body after death and strip[ping] the [ ] clothes off her body . . . ." (*Id.* at PageID# 13.) Jones argues that a witness's testimony that the female victim "was fully clothed at the time" of the murder, *State v. Jones*, 568 S.W.3d at 114, conflicts with a police officer's testimony that "[h]e found the body of Mrs. James . . . 'clothed only in a pair of panties'" *State v. Jones*, 450 S.W.3d at 874.

On this limited record, and in the absence of any contrary argument by Pounds, the Court finds that Jones's *Brady* claim is not "so facially meritless that presenting it to the state courts will be a waste of time." *Bailey v. Lafler*, No. 1:09-cv-460, 2010 WL 4286352, at *5 (W.D. Mich. Sept. 29, 2010); *see also id.* ("[A]n assertion that an unexhausted habeas claim is plainly meritless requires only a facial examination of the unexhausted claim . . . . The *Rhines* Court did not authorize a searching inquiry into the merits of an unexhausted claim at this stage.").

### 3. Intentionally Dilatory Litigation Tactics

Jones argues that he "is doing everything in his power to ensure that his case is resolved promptly[.]" (Doc. No. 28, PageID# 207, ¶ 2.) Pounds does not argue that Jones has engaged in dilatory litigation tactics, and there is no indication of such tactics in the limited record.

Thus, considering the three *Rhines* factors, the Court should grant Jones's motion to stay and abey his § 2254 petition with respect to his speedy trial and *Brady* claims and deny the motion with respect to Jones's jurisdictional claims.

The Supreme Court instructed in *Rhines* that "district courts should place reasonable time limits on a petitioner's trip to state court and back" in deference to "the timeliness concerns

reflected in AEDPA." 544 U.S. at 277, 278. Here, Jones is already pursuing relief in state court post-conviction proceedings. It would be reasonable to order Jones to move to lift the stay of these proceedings within thirty days of exhausting his claims in state court. *See, e.g.*, *Misch*, 656 F. Supp. 3d at 765.

### B. Whether Transfer is Appropriate

Pounds argues that, if the Court determines that a stay is appropriate, the "Court should transfer this action to the United States District Court for the Western District of Tennessee" because the state court of conviction lies in that district. (Doc. No. 27, PageID# 203.) Jones disagrees, arguing that, under the Supreme Court's recent opinion in *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), "habeas petitions must be filed in the jurisdiction of confinement." (Doc. No. 28, PageID# 207.) Jones's jurisdiction of confinement is the Middle District of Tennessee.

The Supreme Court explained in *Rumsfeld v. Padilla*, that, "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" 542 U.S. 426, 442 (2004) (quoting *Carbo v. United States*, 364 U.S. 611, 617 (1961)). However, the Supreme Court further explained that:

> Congress has [ ] legislated against the background of the "district of confinement" rule by fashioning explicit exceptions to the rule in certain circumstances. For instance, § 2241(d) provides that when a petitioner is serving a state criminal sentence in a State that contains more than one federal district, he may file a habeas petition not only "in the district court for the district wherein [he] is in custody," but also "in the district court for the district within which the State court was held which convicted and sentenced him"; and "each of such district courts shall have concurrent jurisdiction to entertain the application."

*Id.* at 443 (second alteration in original) (quoting 28 U.S.C. § 2241(d)). Thus, "[i]n the case of a § 2254 challenge by a state prisoner, the proper forum is not governed by the 'district of confinement' rule." Brian R. Means, *Postconviction Remedies* § 12:5 (suppl. Aug. 2024). The

15
Case 3:23-cv-01063    Document 30    Filed 07/07/25    Page 15 of 17 PageID #: 225

reflected in AEDPA." 544 U.S. at 277, 278. Here, Jones is already pursuing relief in state court post-conviction proceedings. It would be reasonable to order Jones to move to lift the stay of these proceedings within thirty days of exhausting his claims in state court. *See, e.g.*, *Misch*, 656 F. Supp. 3d at 765.

### B. Whether Transfer is Appropriate

Pounds argues that, if the Court determines that a stay is appropriate, the "Court should transfer this action to the United States District Court for the Western District of Tennessee" because the state court of conviction lies in that district. (Doc. No. 27, PageID# 203.) Jones disagrees, arguing that, under the Supreme Court's recent opinion in *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), "habeas petitions must be filed in the jurisdiction of confinement." (Doc. No. 28, PageID# 207.) Jones's jurisdiction of confinement is the Middle District of Tennessee.

The Supreme Court explained in *Rumsfeld v. Padilla*, that, "with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" 542 U.S. 426, 442 (2004) (quoting *Carbo v. United States*, 364 U.S. 611, 617 (1961)). However, the Supreme Court further explained that:

> Congress has [ ] legislated against the background of the "district of confinement" rule by fashioning explicit exceptions to the rule in certain circumstances. For instance, § 2241(d) provides that when a petitioner is serving a state criminal sentence in a State that contains more than one federal district, he may file a habeas petition not only "in the district court for the district wherein [he] is in custody," but also "in the district court for the district within which the State court was held which convicted and sentenced him"; and "each of such district courts shall have concurrent jurisdiction to entertain the application."

*Id.* at 443 (second alteration in original) (quoting 28 U.S.C. § 2241(d)). Thus, "[i]n the case of a § 2254 challenge by a state prisoner, the proper forum is not governed by the 'district of confinement' rule." Brian R. Means, *Postconviction Remedies* § 12:5 (suppl. Aug. 2024). The

Supreme Court's decision in *Trump v. J.G.G.* does not alter this conclusion. In *J.G.G.*, the Supreme Court only addressed habeas claims asserted by individuals in federal custody. It did not address the § 2241(d) exception to the district of confinement rule for petitioners, like Jones, who are in state custody pursuant to state court criminal judgments.

However, the fact that the Western District of Tennessee *could* exercise concurrent jurisdiction over Jones's § 2254 petition under § 2241(d) is not a sufficient basis for transfer. Pounds relies on *Young v. Tennessee*, Civ. No. 3:08-0268, 2008 WL 824307, at *1 (M.D. Tenn. Mar. 24, 2008) (Trauger, J.), for the proposition that "it has been the consistent practice in the federal courts of Tennessee to transfer habeas petitions to the judicial district in which the convicting court is located." (Doc. No. 27, PageID# 204 (alteration omitted) (quoting *Young*, 2008 WL 824307, at *1).) But the court explained in *Young* that the "reason" for this practice is that "a petitioner's place of confinement may change from time to time while the district of his convictions will remain constant." 2008 WL 824307, at *1. That is not a concern in this case. Jones is sentenced to death, and RMSI is the only correctional facility in Tennessee that houses men on death row. *See* Tenn. Dep't of Corr., *Riverbend Maximum Security Institution*, https://perma.cc/FJ27-XXGE ("Riverbend [ ] houses all of Tennessee's male death row offenders."). Pounds also cites *Demery v. Donahue*, Civ. No. 13-1011, 2013 WL 3967181, at *1 (W.D. Tenn. Aug. 1, 2013), in support of his request to transfer Jones's § 2254 petition to the Western District of Tennessee. (Doc. No. 27.) In *Demery*, the court transferred a § 2254 petition to the district of conviction because it found that records from the petitioner's state court proceedings were "not readily accessible" to the court in the district of confinement. 2013 WL 3967181, at *1. Pounds has not identified any similar difficulties accessing records from the Shelby County Criminal Court, and this Court is not aware of any.

Accordingly, Pounds's request to transfer Jones's § 2254 petition to the Western District of Tennessee should be denied.

## III. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Jones's motion to stay and abey his § 2254 petition (Doc. No. 26) be GRANTED IN PART AND DENIED IN PART. Jones's stay-and-abey motion should be granted with respect to his speedy trial and suppression of evidence claims and denied with respect to his jurisdictional claims. Pounds's request to transfer Jones's § 2254 petition to the Western District of Tennessee should be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 7th day of July, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge